## RYAN *v.* RAILROAD COMPANY.

1. An act of Congress (14 Stat. 239) granted to a railroad company, to aid in the construction of its road, every section of public land designated by odd numbers, to the amount of "twenty alternate sections per mile (ten on each side) of said railroad line," and provided that, where any of said sections or parts of sections should be found to have been granted, sold, reserved, occupied by homestead settlers, pre-empted, or otherwise disposed of, the company should, in lieu thereof, select, under the direction of the Secretary of the Interior, other lands nearest to the limits of said sections, and not more than ten miles beyond them. There being a deficiency of said sections to satisfy the grant, the company, with the approval of said Secretary, selected as part indemnity a quarter of an odd-numbered section of public land within ten miles beyond those limits, and obtained a patent therefor from the United States. When so selected, it was within a tract formerly covered by a Mexican claim, which, although *sub judice* at the date of the act, had been finally rejected as invalid. *Held*, that the patent conveyed a perfect title to the company.

2. *Newhall* v. *Sanger* (92 U. S. 761) cited and distinguished from this case.

APPEAL from the Circuit Court of the United States for the District of California.

This is a suit in equity brought by Ryan to enjoin and restrain the Central Pacific Railroad Company from relying upon or using as evidence a patent issued to it by the United States for a certain tract of land in California.

The company is successor to the California and Oregon Railroad Company, to which, in aid of the construction of a railroad, Congress granted land by an act approved July 25, 1866 (14 Stat. 239), entitled "An Act granting lands to aid in the construction of a railroad and telegraph line from the Central Pacific Railroad, in California, to Portland, in Oregon," the second section whereof is set out in the opinion of the court.

The land in controversy is situated within the indemnity or ten-mile limits beyond the alternate sections first named in the act, and at its date was within the exterior boundaries of a certain Mexican claim known as the Manuel Diaz grant, which was finally rejected as invalid, March 3, 1873.

Oct. 30, 1874, the company finding that there were not sufficient odd-numbered sections within the limits of its grant, not otherwise granted, &c., to make the quantity to which it was entitled, made selection of the land in controversy, the same being then public land, and applied for a patent therefor, in all respects in the manner provided by said act. This selection was examined by the register and receiver of the proper land-office, and it appearing to them that there were not sufficient alternate sections within the twenty-mile limits of the railroad grant, not otherwise granted, &c., to satisfy the grant, they, Dec. 26, 1874, approved the selection as indemnity for a portion of the lands so lost, and thereafter forwarded the same to the Commissioner of the General Land-Office. The selection was thereupon approved by the Secretary of the Interior, and a patent was issued to the company, March 17, 1875.

Ryan being in all respects qualified to avail himself of the provisions of an act of Congress, entitled " An Act to secure homesteads to actual settlers on the public domain," approved May 20, 1862 (12 Stat. 392), filed an application, July 14, 1876, accompanied by his affidavit, as required by said act, in the proper land-office, to be allowed to enter as a homestead the quarter-section so selected by, and patented to, the company; and he thereupon paid the lawful fees, and received a duplicate receipt from the register and receiver therefor. He subsequently built a house thereon, and, Nov. 4, 1876, moved with his family into said house, where he continued to reside until the commencement of this suit. He alleges that the said patent is held and asserted by the company in hostility to his title.

The court dismissed the bill, and Ryan appealed here.

*Mr. John Currey* for the appellant.

*The Attorney-General* for the United States.

If the right of the company to land within the indemnity limits attached at the same time as its right to the odd-numbered sections within the original limits, it is conceded by the

counsel for the appellee that the rule in *Newhall* v. *Sanger* (92 U. S. 761) is applicable to .this case, and, if adhered to, must govern its decision.

The records of the Department of the Interior establish that the order withdrawing the lands from sale or other disposal embraced those within the granted and the indemnity limits alike ; and the question recurs, whether that order was authorized and required by the act under which the appellee claims.

The grant was *in præsenti*, and acquired precision upon the definite location of the road. *Railroad Company* v. *Smith*, 9 Wall. 95 ; *Schulenberg* v. *Harriman*, 21 id. 44 ; *Leavenworth, &c. Railroad Co.* v. *United States*, 92 U. S. 733. Upon such location, it was made the duty of the Secretary of the Interior to order a withdrawal from sale of the public lands granted " within the limits before specified." What were they ? Manifestly thirty miles on each side of said line of road. The language of the act is " twenty alternate sections per mile (ten on each side) of said railroad line." Ten alternate sections on either side of said road could only be found by extending over a space of twenty miles.

This is the first limit mentioned in the act.

If the twenty alternate sections were not found within that limit, then the company had the right to select other lands in lieu of those " sold, reserved, occupied by homestead settlers, pre-empted, or otherwise disposed of " within the next ten miles.

This is the second limit mentioned in the act.

The act, however, requires the withdrawal " within the limits before specified," the plural being used, evidently, to include both limits. Where the word " limits " occurs in the preceding part of the second section, it means the twenty miles on each side of the road ; but in the clause " within the limits before specified," it refers to the entire limits of the grant.

The order of withdrawal, therefore, properly embraced both the twenty and the ten mile limits. Any other manner would not have been in accordance with the terms of the act. Certainly Congress would not have required the lands within the indemnity limits to be withdrawn, if they were not included in the grant.

The grant was of ten sections per mile on each side of the road, provided, at the time of its definite location, the United States owned that quantity within thirty miles of either side thereof. It is urged by the appellee that the grant acquired precision upon such location, only as to the lands included within what is termed the granted limits. This is clearly incorrect. Every alternate section of public land within the indemnity limits, so called, was, by the order of withdrawal, subject to the grant. By such location, and that order, the company acquired a vested right in each section, viz. a right to a patent, provided any section of land or a part thereof, within the first limits mentioned, was lost by any of the ways specified in the act.

While it is true that no title to land within the indemnity limits passed absolutely upon such location, it is also true that the right to acquire title to the alternate sections there situate was granted. Upon the order of withdrawal, the right of the United States to dispose of them ceased. The title within those limits is acquired by virtue not of the selection, but of the grant, although that is made definite by the selection. The title to public lands can only be derived under a general or a special act of Congress. *Wilcox* v. *Jackson*, 13 Pet. 498; *Bragnell* v. *Broderick*, id. 436.

Under the ruling of the Department of the Interior the grant to the company attached at the same time to all the odd-numbered sections of public land within the granted and the indemnity limits.

This construction, although not binding upon this court, is entitled to great respect (*United States* v. *Dickson*, 15 Pet. 141); and we submit that having received the benefit of it, and thereby obtained thousands of acres of valuable land which otherwise would have been disposed of by the government, while thousands of other acres have been, and still are, withheld from disposal, the company should not be permitted now to question the correctness of such construction.

*Mr. S. W. Sanderson, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

After this case was submitted to the court upon printed

arguments by the counsel of the parties, the Attorney-General expressed a wish to be heard in behalf of the United States, and an oral argument was thereupon ordered. The case was argued in that way, fully and ably, by that officer and by the counsel for the appellee, and I am directed now to deliver the opinion of the court.

There is no controversy about the facts.

By the act of Congress of July 25, 1866, Congress granted certain lands to the California and Oregon Railroad Company. The appellee claims under that grantee, and has succeeded to its rights. At the date of the act there was pending a claim for the confirmation of a Mexican grant, which embraced within its boundaries the premises in controversy between these parties. The appellant insists that he has a paramount title, not under, but by reason of this claim, as will hereafter appear.

The second section of the act referred to is as follows: —

"SECT. 2. And be it further enacted, that there be, and hereby is, granted to the said companies, their successors and assigns, for the purpose of aiding in the construction of said railroad and telegraph line, and to secure the safe and speedy transportation of the mails, troops, munitions of war, and public stores, over the line of said railroad, every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile (ten on each side) of said railroad line; and when any of said alternate sections, or parts of sections, shall be found to have been granted, sold, reserved, occupied by homestead settlers, pre-empted or otherwise disposed of, other lands, designated as aforesaid, shall be selected by said companies in lieu thereof, under the direction of the Secretary of the Interior, in alternate sections designated by odd numbers as aforesaid, nearest to and not more than ten miles beyond the limits of the said first-named alternate sections," &c.    14 Stat. 239.

Under this statute, when the road was located and the maps were made, the right of the company to the odd sections first named became *ipso facto* fixed and absolute. With respect to the "lieu lands," as they are called, the right was only a float, and attached to no specific tracts until the selection was actually made in the manner prescribed.

On the 3d of March, 1873, the alleged Mexican grant was

declared invalid by this court and finally rejected. On the
30th of October, 1874, it was found there was not enough of
the alternate odd sections within the primary limits to satisfy
the grant to the railroad company. On that day the appellee
selected the land in question. Though not within them, it was
within the indemnity limits prescribed in the act, and was
intended in so far to supply the deficiency within the former.
The selection was approved by the local land-officers on the
26th of December, 1874. This approval was confirmed by the
Secretary of the Interior, and a patent in due form was issued
to the appellee on the 17th of March, 1875. At the time of
the selection the premises were public land. The Mexican
claim had been rejected by this court more than a year and a
half before, and the land was not within any exception expressed
or implied in the act. Afterwards, on the 14th of July, 1876,
the appellant being in all respects qualified, filed an application
in due form to be allowed to enter the land in question under
the homestead act of 1862. He paid the proper fees and re-
ceived a duplicate receipt from the register and receiver of the
land-office of the district. He filed this bill to restrain the
appellee from availing itself of the patent, upon the ground
that the land was not subject to selection in lieu of the deficit
of odd sections within the twenty-mile limits specifically granted
by the act.

After this plain statement of the case, it is difficult to imagine
any defect that can exist in the title of the appellee, or any
right, legal or equitable, that the appellant can have.

But it is said the case is within the principle established in
*Newhall* v. *Sanger* (92 U. S. 761), and must be controlled by
that adjudication. This is the sole objection to the appellee's
title, and it is founded in a mistake. The two cases are distin-
guishable by a broad line of demarcation.

In the former case, the lands covered by the false Mexican
claim were situated within the limits of the territory where
the right of the company attached to the designated odd sec-
tions granted when the road was located and the requisite maps
were made. At that time the claim was in litigation, and
*sub judice.* The court held that under these circumstances the
premises were not "public land," within the meaning of the

law, and could not become such until the title of the government was vindicated by the defeat of the claim, and that the patent issued to the railroad company was, therefore, void.

After the Mexican claim had been disposed of and before a new appropriation was made or attempted to be made by the company, the junior patent was issued to another party, and it was held that he had a valid title. The Mexican claim was finally rejected by this court on the 13th of February, 1865. It was insisted by the company that the judgment should be held to relate back to the first day of the term, so as to disembarrass the title of the claim as of that date. This was refused. The court said, " to antedate the rejection of a claim so as to render operative a grant which would be otherwise without effect, does not promote the ends of justice, and cannot be sanctioned." It was admitted by clear implication that if the lands had been thus disembarrassed at the date of the grant, or their withdrawal from sale, the elder patent would have been valid.

Again, speaking of lands embraced in such a claim the court says expressly, " they were regarded as forming a part of our public domain only after the claim covering them had been finally rejected." . . . " They then became *public* in the just meaning of that term, and were subject to the disposing power of Congress."

Here the land was not a part of the alternate odd sections specifically granted. It was not -within the limits of that territory. There, there was a deficiency.

It was within the secondary or indemnity territory where that deficiency was to be supplied. The railroad company had not and could not have any claim to it until specially selected, as it was, for that purpose. It was taken to help satisfy the grant to the extent that the odd sections originally given failed to meet its requirements. When so selected there was no Mexican or other claim impending over it. It had ceased to be *sub judice*, and was no longer in litigation. It was as much " public land " as any other part of the national domain. The patent gave the same title to the appellee that a like patent for any other public land would have given to any other party. The Mexican claim when condemned lost its vitality. From

that time, as regards the future, it ceased to be a factor to be considered, and was in all respects as if it had never existed. In this state of things the appellee acquired its title, and that title is indefeasible.

*Newhall* v. *Sanger* applies only where the adverse claim is undisposed of when the grant would otherwise take effect. It has no application as to the future after the claim has ceased to exist.

*Decree affirmed.*


MR. JUSTICE HARLAN concurred in the judgment, because Ryan, upon the face of his bill, was not entitled to any relief from a court of equity. The bill should have been dismissed without any consideration of the merits of the case, about which he expressed no opinion.