ELLING · ET AL., appellants, *v.* THEXTON, respondent.

PUBLIC LANDS. — *Under the acts of Congress, the Northern Pacific Railroad Company does not acquire title to lands selected in lieu of lands lost, until such selections have been approved by the Secretary of the Interior.* — The plaintiffs based their title to the land in controversy, for which they brought the action in ejectment, upon a deed from the Northern Pacific Railroad Company. That corporation, it was claimed, had acquired its title by virtue of a selection of certain lands (in which the tract in dispute was included), and the entry and acceptance thereof by the United States land-office at Bozeman, Montana. *Held,* under section 3 of the act of Congress passed July 2, 1864, relating to the Northern Pacific Railroad Company, that, until the selection of the lands aforesaid had been examined and approved by the secretary of the department of the interior, through the land-office at Washington, District of Columbia, no title to said land could vest in the railroad company, and that therefore plaintiffs could not recover in this action.

ID. — *Of what a court cannot take judicial notice.* — In the case at bar, the court was asked to take judicial notice of the great losses which the Northern Pacific Railroad Company had sustained by reason of the Indian reservations, and of the settlements which had been made within the limits of its grant prior to the final location of its line, and from this to assume that the selection of the lands aforesaid was in lieu of losses thus sustained: *held,* that the court could not take such notice.

*Appeal from District Court, Madison County.*

H. N. BLAKE, and SANDERS, CULLEN, & SANDERS, for the appellants.

The lands in the indemnity limit are granted to the company when selected by the company under the direction of the Secretary of the Interior, as absolutely as are the lands within the limits of the grant proper. There is nothing in the law (Act of July 2, 1864) requiring selections made to be accompanied by a statement of the specific tracts in lieu of which they are selected, and the court will take judicial notice of the fact that many millions of acres of lands included in this grant are lost to the Northern Pacific Railroad Company in Indian and military reservations. The court will take judicial notice, further, that at the time of the filing of the map of the preliminary route the country was largely settled,

whereby much land was lost to the railroad company. The selection has been made under the direction and in accordance with the requirements of the interior department. There is nothing in any statute of the United States intimating or suggesting that the lieu lands must be those nearest to the lost lands. The sections from which this right of selection is secured to the company are designated in the act. They must be sections within a fifty-mile limit, but within that limit the right is secured to the company to make its choice. The Congress of the United States in this matter was careful to say that the selection should be by the company. The time and manner of this selection, and how it should be conducted, are proper matters of direction by the Secretary of the Interior, but the selection itself is to be by the company. This matter is well illustrated by the course of congressional legislation. Some of the later statutes allow no selections of lieu lands for lost lands beyond a certain distance. See *Barney* v. *Winona and St. Peter R. R. Co.*, 6 Fed. Rep. 802. In the decision of Judge Miller above referred to, he recognizes the fact that any attempt to limit the choice to the rule invoked in this case would be a grant of lands in place, and there is a wide difference between a grant of lands in place and a grant of lands with the right to select them. The phrase used in the statute, "under the direction of the Secretary of the Interior," contemplates a selection made under rules previously given, as was done in this case, while an approval of a selection would be an act by the secretary after the selection had been made. That the land was occupied and inclosed at the time the selection was made does not impair the railroad company's title. The land was withdrawn from entry under a law of the United States, by the interior department. Every person who went onto it went onto it with the knowledge that he could not acquire any title to it. The finding is, that

it was occupied and inclosed, and not that anybody set-
tled on it, and it appears that an attempt was made to
file upon it as desert land after title had passed to the
company, in May, 1885. Doubtless the court below was
misled by the omission of appellants' counsel below to
call its attention to the executive directions, but they
were matters, not of proof, but of facts, of which the
court was charged with the duty of taking judicial no-
tice. See *Hoyt* v. *Russell*, 4 Mont. 412; 117 U. S. 401;
*Watkins* v. *Holman*, 16 Pet. 25.

SAMUEL WORD and R. B. SMITH, for the respondent.

The grant of the Northern Pacific Railroad Company
was by act of July 2, 1864. See U. S. Stats. 365. The
right to select lands in the indemnity limits cannot, un-
der this law, exist until it shall be shown that lands in the
twenty-mile limit have been "granted, sold, reserved, oc-
cupied," etc., prior to the time of the definite location of
the line of said road. The right to granted sections of
land, and the right to others in lieu of such odd sections
as have been previously disposed of, depend upon very
different circumstances. *Cedar Rapids R. R. Co.* v. *Her-
ring*, 110 U. S. 38; *Ryan* v. *Railroad Co.*, 99 U. S. 382; *K. P.
R. R.* v. *A. T. & S. F.*, 112 U. S. 414; *St. P. R. R.* v. *Winona
R. R.*, 112 U. S. 731. Also see *N. P. R. R. Co.* v. *Guilford
Miller*, Land-office Report, 1885, p. 201, and authorities
there cited, where this whole subject is exhaustively dis-
cussed by Commissioner Sparks. We also refer to the
letter of Grover Cleveland to the secretary, dated April
28, 1887, Copp's Land Owner, May 1, 1887, p. 27. When
the right to select accrues, such selection must be made
from the nearest undisposed sections of land of the char-
acter mentioned. *Wood* v. *Railroad Co.*, 104 U. S. 331.
The title to the land in dispute is yet in the government
of the United States, and the railroad company conveyed
no title to plaintiff. The paper filed by Lamborn, agent

of the railroad company, in the local land-office, does not show that the railroad company had lost any lands to entitle it to make selection. Neither the Secretary of the Interior nor the commissioner had authority to authorize the selection of lieu lands without proper showing of lost lands in the original grant. The orders of the secretary and commissioner to that effect were illegal and void. See *Lee* v. *Munroe*, 7 Cranch, 369; *United States* v. *City Bank*, 6 McLean, 130; *Johnson* v. *United States*, 5 Mason, 425; *Mayor* v̈. *Eschback*, 18 Md. 282; *Miller* v. *Trustees*, 7 Bosw. 600. The order of the commissioner referred to limits such selections to "clear lists free from objections." In the case at bar a most serious objection rests against the selection of the land in dispute, for the record shows that the respondent has possessed, improved, and occupied this land for over three years prior to the filing of the pretended selection filed in the local land-office. This case presents the same facts and conditions as the Guilford Miller case. In the one as in the other, the claimant could not file on and enter his land because of the illegal order withdrawing the same from market. Guilford Miller Case, Land Office Report of 1885, p. 201. The law does not contemplate that the railroad company, when lawfully entitled to make a selection, shall take from any lands in the indemnity limits without regard to the fact of occupation or settlement by the citizen. This involves the necessity of the Secretary of the Interior approving of selections before title can vest in the railroad company. The selections referred to have not been approved by the Secretary of the Interior.

McCONNELL, C. J. This is an action in the nature of an action of ejectment, and, in addition, brought to recover damages for trespasses, and to obtain an injunction restraining the defendant from the commission of

future trespasses. The cause was tried by the court, and the special findings of facts furnish the best history of the case we can give. They are as follows: —

" 1. The plaintiffs, at the times in the pleadings specified, derived all their right, title, and interest in and to the land mentioned in the pleadings by virtue of a deed of warranty from the Northern Pacific Railroad Company, a corporation duly organized under the act of Congress approved July 2, 1864.

" 2. The title, right, and interest of the said Northern Pacific Railroad Company to the said land is derived from the acts of Charles B. Lamborn, the land commissioner of the said company, in selecting the said land, and the proceedings of O. P. Chisholm, the register, and John T. Carlin, the receiver, of the United States landoffice at Bozeman, territory aforesaid, as mentioned in the following documents, duly filed in the said land-office, to wit:—

"LAND DEPARTMENT, NORTHERN PACIFIC RAILROAD Co. List No. 3.
"TERRITORY OF MONTANA, U. S. LAND-OFFICE AT BOZEMAN, 1885.

" The Northern Pacific Railroad Company, under and by virtue of the acts of Congress, entitled 'An act granting lands to aid in the construction of a railroad and telegraph line from Lake Superior to Puget Sound, on the Pacific coast, by the northern route,' approved July 2, 1864, and 'A resolution authorizing the Northern Pacific Railroad Company to issue its bonds for the construction of its road, and to secure the same by mortgage, and for other purposes,' approved May 31, 1870, and under and in pursuance of the rules and regulations prescribed by the commissioner of the general landoffice, hereby makes and files the following lists of selections of public lands claimed by the said company as inuring to it, and to which it is entitled under and by virtue of the grants and provisions of the said act of Congress; and the location of the line of route of the

railroad of said company being for a section of —— miles of the same, commencing at —— and ending at ——; the selection being particularly described as follows, to wit: List No. 3, of selections of public lands in the Bozeman land district, Montana, claimed by the Northern Pacific Railroad Company as inuring to it under the act of Congress approved July 2, 1864, and the several acts amendatory thereof. [Here follows description of land; also affidavits of Charles B. Lamborn, land commissioner of the Northern Pacific Railroad Company, certifying as to the selections of land made.]

"UNITED STATES LAND-OFFICE, BOZEMAN, M. T., March 20, 1885.

"We hereby certify that we have carefully and critically examined the foregoing list of lands claimed by the Northern Pacific Railroad Company, under the grant of said company by act of Congress approved July 2, 1864, and joint resolution approved May 31, 1870, and selected by said Northern Pacific Railroad Company, by Charles B. Lamborn, the duly authorized agent; and we have tested the accuracy of said list by the plats and records of this office, and that we find the same to be correct; and we further certify that the filing of said list is allowed and approved, and that the whole of said lands are surveyed public lands of the United States, and within the limit of fifty miles on each side, and that the same are not, nor is any part thereof, returned and denominated as mineral land or lands, nor claimed as swamp lands, nor is there any homestead, pre-emption, state, or any other valid claim to any portion of said lands on file or of record in this office. We further certify that the foregoing list shows an assessment of the fees payable to us allowed by the act of Congress approved July 1, 1864, and contemplated by the circular of instructions dated January 24, 1867, addressed by the commissioner of the general land-office to the registers and receivers of the United States land-offices; and that

the said company have paid to the undersigned, the receiver, the full sum of two hundred and fifteen dollars in full payment and discharge of said fees.

(Signed)                    " O. P. CHISHOLM, Register.

                            " JOHN T. CARLIN, Receiver.

[Here follows affidavit of O. P. Chisholm, as to foregoing being a true copy of list No. 3.]

" 3. The said land is more than forty miles from the line of the said Northern Pacific railroad, and less than fifty miles therefrom, and is a part of the so-called ' lieu lands ' of said company, within the indemnity limits, if properly selected by the land commissioner of said company.

" 4. The defendant's intestate, in 1881, inclosed the land in controversy with other land, and on the first day of May, 1885, filed on the same in the said United States land-office at Bozeman aforesaid, under the desertland laws of the United States. The said filing was rejected, and an appeal taken therefrom to the general commissioner of the land-office at Washington, D. C., where the same is still pending.

" 5. The defendant's intestate did not occupy the land in controversy as a resident, but lived upon the adjoining land, belonging to his father.

" 6. The defendant's intestate was using the land in controversy, at the times mentioned in the complaint, for pasturage, and warned the employees of the plaintiffs to desist from their labor for the plaintiffs thereon, and notified plaintiffs and their said employees to refrain from entering upon the said land, and declared to them that they would not be permitted to possess the same."

From these findings of fact the court found the following conclusions of law: —

" 1. The deed to the plaintiffs from the Northern Pacific Railroad Company was in due form to convey to the plaintiffs the right, title, and interest of said company to

the land in controversy; but the said company has never had any right, title, or interest to said land, and conveyed none to the plaintiffs by the said deed.

" 2. The selection of the land in controversy by the said Lamborn, as the land commissioner of the Northern Pacific Railroad Company, according to the documents specified in and made a part of the second finding of fact herein, was not legal, and no right, title, or interest in said land vested in the said company by reason thereof.

" The documents hereinbefore specified do not show in lieu of what lost lands the said Northern Pacific Railroad Company selected the land in controversy; they do not show that the tract selected lies nearest the land lost, and in lieu of which it is taken; and it nowhere appears that said selection by said company has been approved by the Secretary of the Interior.

" 4. The plaintiffs must show in this action that the Northern Pacific Railroad Company made a valid selection of the land in controversy; and having failed to do so, it is ordered, adjudged, and decreed that the defendant go hence without delay, and recover his costs and disbursements herein expended, and that judgment be entered accordingly.

(Signed)    " J. H. McLEARY, Judge of said Court."

We do not deem it necessary to review all the findings of law of the court, but shall content ourselves with determining the question whether the Northern Pacific Railroad Company had acquired title to the land in controversy, and was thus enabled to impart title to the appellants.    The claim of the railroad company rests upon section 3 of an act passed July 2, 1864, entitled "An act granting lands to aid in the construction of a railroad and telegraph line from Lake Superior to Puget Sound, on the Pacific coast, by the northern route."    Said section is as follows: " Be it further enacted, that there be,

and hereby is, granted to the Northern Pacific Railroad Company, its successors and assigns, for the purpose of aiding in the construction of said railroad and telegraph line to the Pacific coast, . . . . every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile, on each side of said railroad line, as said company may adopt through the territories of the United States; . . . . and whenever on the line thereof the United States have full title, not reserved, sold, granted, or otherwise appropriated, and free from pre-emption or other claims or rights at the time the line of said road is definitely fixed, and a plat thereof filed in the office of the commissioner of the general land-office; and whenever, prior to said time, any of said sections or part of sections shall have been granted, sold, reserved, occupied by homestead settlers, or pre-empted, or otherwise disposed of, other lands shall be selected by said company in lieu thereof, under the direction of the Secretary of the Interior, in alternate sections, and designated by odd numbers, not more than ten miles beyond the limits of said alternate sections."

It will be seen that this statute grants absolutely to the railroad company every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty sections per mile on each side of said railroad line; that this statute is not only a law, but a conveyance, so far as these alternate odd-numbered sections that lie within the belt granted are concerned, but that for any to which the company may fail to get title by reason of previous appropriation, the statute gives the company the right of selection of other lands within the belt of ten miles, known as the " indemnity belt," in lieu of the land so lost. There can be no right to select where there is no loss established; and the selection is limited by the loss. The right of selection is vested by the statute in the company, but it must be done under

the direction of the Secretary of the Interior. This right of selection does not vest the title in the railroad company to any lands in the indemnity territory. The government has full control over them, and may sell and dispose of them, or reserve them at will, before such selections are made. In the case of *Railroad* v. *Railroad*, 112 U. S. 721, the court says: " The time when the right to lands becomes vested, which are to be selected within given limits under these land grants, whether the selection is in lieu of lands deficient within the primary limits of the grant, or of lands which for other reasons are to be selected within certain secondary limits, is different in regard to those that are ascertained within the primary limits by the location of the line of the road. In *Ryan* v. *Railroad Co.*, 99 U. S. 382, this court, speaking of a contest for lands of this class, said: ' It was within the secondary or indemnity territory where that deficiency was to be supplied. The railroad company had not and could not have any claim to it until specially selected, as it was for that purpose'; and the reason given for this is, that ' when the road was located, and maps were made, the right of the company to the odd sections first named became fixed and absolute. With respect to the " lieu lands," as they are called, the right was only a float, and attached to no specific tracts, until the selection was actually made in the manner prescribed.' " See also *Grinnell* v. *Railroad Co.*, 103 U. S. 739; *Railroad Co.* v. *Herring*, 110 U. S. 27; and *Railway Co.* v. *Railroad Co.*, 112 U. S. 414.

It will be seen, then, from the construction which the supreme court has given to this statute, that the right to select these " lieu lands " is a mere float, and vests no title in the company until the selection has been made according to law. It is insisted, on the part of the appellants, that the company has the right to make the

selection under the general direction of the Secretary of
the Interior.  It is not very clear what is meant in the
statute by the expression "under the direction of the
Secretary of the Interior"; but that he has a supervisory
power over the company in making the selection, there
can be no doubt, and we take it that the law charges him
with the duty of seeing that the selections are made
only in lieu of lands which have been lost by the com-
pany, and that they do not exceed the amount of the
losses.  As to whether the company is limited to mak-
ing selections of such unoccupied odd sections as may
lie nearest to the sections that have been lost, and that
the Secretary of the Interior is charged with the duty of
seeing that the selections are thus made, we do not
deem it necessary to decide in this case.  Suffice it to
say that we are of the opinion that the law imposes upon
the Secretary of the Interior the duty of seeing that these
selections are made only for the purpose of making up
the deficiencies under the grant of the company by
reason of such sections having been appropriated before
the definite location of the line of its road.  But it is
insisted that the selection has been made by the com-
pany, under the direction of the Secretary of the Interior,
as provided by the statute; and that, having made the
selection of the land in controversy, its title to it became
perfect, and that therefore the appellants have a perfect
title.  There is nothing in the record to indicate how
the selection was made; but it is provided by the stat-
ute of Montana (section 625, old edition) that "courts
take judicial notice of the public and private acts of the
legislative, executive, and judicial departments of this
territory, and of the United States."  See also the case
of *United States* v. *Williams*, 6 Mont. 379; and as bear-
ing upon this subject, we are referred to the following
letter of H. M. Teller, Secretary or the Interior: —

DEPARTMENT OF THE INTERIOR,
WASHINGTON, May 28, 1883.

THE COMMISSIONER OF THE GENERAL LAND-OFFICE.

*Sir,*—It is my desire to open for settlement, as speedily as possible, all the lands within the indemnity limits of the grant to the Northern Pacific Railroad Company not actually required to supply the lands lost in place within the granted limits. The grant should be adjusted at the earliest possible time, that the orders of withdrawal may be vacated without unreasonable delay, as indicated in my letter of the 17th inst. The unparalleled demand for lands for actual settlement by great numbers of persons, not only from foreign countries, but from the older states, seeking homes, under the settlement laws, along the line and in the vicinity of the Northern Pacific grant, requires, for the best interest of the country, and for all parties concerned, that the withdrawals should not be maintained any longer than is actually necessary for the adjustment of the guaranteed rights of the company. In order to facilitate the work of making selections, I think you should instruct the local officers that, when clear lists of selections, free from conflict or other objection, are filed with the district officers, and approved by them, said selections should at once be marked upon their books, and forwarded for final examination, leaving the ascertainment of lands lost in place to our office, instead of requiring preliminary lists of such lost lands, together with the indemnity lands, tract for tract, from the company, as heretofore. I am satisfied that the work of adjusting the grant will go forward much more rapidly under this plan than under the former practice.

Very respectfully,

H. M. TELLER, Secretary.

And also to the letter of L. Harrison, assistant commissioner, which is as follows:—

DEPARTMENT OF THE INTERIOR,
GENERAL LAND-OFFICE, February 25, 1885.

REGISTER AND RECEIVER, Bozeman, Montana Territory.

*Gentlemen,* — Referring to your letter of the 10th inst., you are advised that on May 28, 1883, the Honorable Secretary of the Interior decided that the Northern Pacific Railroad Company should not be required to designate the lost lands in making selections of indemnity lands. If clear lists of indemnity selections by said company, free from other objections, are presented, you will admit the same, note the selection on your records, and forward the lists to this office, without requiring the company to designate the lost lands.

Very respectfully,

L. HARRISON,

Assistant Commissioner.

The selection was noted in the land-office at Bozeman on the 20th of March, 1885, and the selections were presumably forwarded to Washington for final examination, according to the directions of the letter of Secretary Teller. An inspection of that letter shows us that the secretary directed " that when clear lists of selections, free from conflict or other objection, are filed with the district officers, and approved by them, said selections should at once be marked upon their books, and forwarded for final examination, leaving the ascertainment of the lands lost in place to the office of the land commissioner at Washington, instead of requiring preliminary lists of such lost lands, together with the indemnity lands, tract for tract, from the company, as heretofore." The only effect, then, of making such selections, filing them in the office of the register at Bozeman, and having them marked upon his books, was to give to the railroad company an inchoate right to the lands thus selected. The direction of the secretary was that they should be forwarded for final examination, and that the

ascertainment of the lands lost in place of them was to be made in the land-office at Washington, instead of the local office at Bozeman. It is to be borne in mind that the right to make the selection depends upon the loss; that if there were no losses there could be no "lieu lands"; that the selection was to be made under the direction of the Secretary of the Interior; that the Secretary of the Interior might well direct, as his letter shows, that the comparison of the lands selected with those lost, to see that one was equal to the other, might be made in the land-office at Washington, instead of being intrusted to a local officer; but until that was done, and the selection was finally examined in the land-office at Washington, and it was ascertained that lands were lost, which gave the right to make the selection under consideration, no title to the lands thus selected could vest in the railroad company. In the language of the supreme court of the United States, in the case of *Ryan* v. *Railroad Co.*, it was a mere float, and in no way communicated a title to the company until that was done. This construction does not interfere with the broadest liberty on the part of the company to make the selections; but it puts those selections so far under the surveillance of the Secretary of the Interior as to require it to show that lands had been lost, so as to give the right to make the selections. The act of Congress granting the right to make selections only after the lands were lost, or upon condition that they were lost, is higher than any order or direction of the Secretary of the Interior; and any order or direction made by that officer in contravention of the statute is void, and no rights can arise under it.

But we do not decide that the order of the secretary, in directing that the lists might be filed in the local office and marked in the books of the officers there, and forwarded to the land-office at Washington for final examination for the ascertainment of the lands lost, is a void order.

Indeed, we think that it is not; that he had the power to do that. But before the railroad company could perfect the title by selection, such final examination must take place, and the commissioner find that lands have been lost, which gave the right to make the selection. In the report of the commissioner of the land-office for the year 1885 we find this language used, to wit: "Instructions have been issued with your approval since the commencement of the current year, directing registers and receivers of the United States land-offices to require lists to be filed in every case of application by railroad companies for indemnity selections, specifying the particular alleged deficiencies for which indemnity is claimed, and that, in cases where indemnity selections have heretofore been made by any company without specification of losses, to admit no further selections by such companies until they have designated the claimed deficiencies to which the lands already selected as indemnity are to be applied." It would seem from this statement that the order made by Secretary Teller, allowing the company to make selections without specifying the losses for which they were made, was rescinded some time during the year 1885. The selections in this case were made on the 20th of March, 1885. Presumably they were made before the previous order was rescinded; but how this is we are not certain from the papers of the department of the interior to which we have had access. But we think this is a matter wholly immaterial, whether it had or had not been rescinded, because we do not think that the railroad company has acquired any title or right to the possession under the orders given above.

We do not deem it necessary to discuss the other questions arising in this case. We are asked by the appellants to take judicial notice of the great losses which the railroad company must have sustained by reason of the Indian reservations, and of the settlements which

were made within the limits of its grant prior to the final location of its line, and from this to assume that the selection under consideration was in lieu of losses thus sustained. We cannot do this. This is a matter for the executive department of the government. It is a part of the duty of the Secretary of the Interior; and before the railroad company or those holding under it can come and ask possession of a tract of land, they must be able to deraign a title, and it is upon it to show that the selection was made of the particular tract of land in controversy for a loss which it had sustained; that in the adjustment of losses in the land-office at Washington this particular tract had been allowed as "lieu land," so as to give it a title. This they have not done. They have but shown a simple preliminary step towards a title; but for the want of the approval of the Secretary of the Interior, or of a showing by some authority that the land selected was in lieu of some particular land lost, they have not shown any title. It may be that upon the adjustment of the selections with the losses it will appear that the selection under consideration was lawfully made, and that in that event the title of the Northern Pacific Railroad Company will relate back to the date of the selection in March, 1885, and the title, when thus acquired, will inure to the benefit of the appellants, and that in that event they would have a valid title as against the defendant to the land in controversy; but we do not decide this. Even if that be true, the present action has been prematurely brought.

We therefore affirm the judgment of the court below, with costs.

*Judgment affirmed.*

GALBRAITH, J., and BACH, J., concur.