# SOUTHERN PAC. R. Co. *v.* WIGGS *et al.*

*(Circuit Court, N. D. California.* June 23, 1890.)

1. PUBLIC LANDS—RAILROAD GRANTS.
   The act of congress of July 27, 1866, granting lands to the Southern Pacific Railroad Company, was a grant of quantity; and the grantee, upon accepting the grant, filing its map of location and building and equipping its road in the time and manner prescribed by the act, was entitled to its full complement of land to the amount of 10 alternate sections per mile on each side of the road so constructed, provided the same could be found either within the specified present grant, or indemnity limits.

2. SAME—LOCATION.
   The Southern Pacific Railroad Company filed its map of definite location on the 3d of January, 1867, in the office of the commissioner of the general land-office, showing the present granted and indemnity limits thereon, which granted and indemnity limits are clearly defined in the act of congress; and the indemnity belt is particularly limited to specified boundaries outside of the granted limits. *Held,* that upon filing the map of definite location, and upon the secretary of the interior issuing his order withdrawing all the lands within 40 miles of the line of the road, the odd-numbered sections both within the present granted and indemnity limits were withdrawn from pre-emption, homestead entry or any other disposition by the government. Furthermore *held,* that the statute itself in terms provides that the odd sections shall not be liable to sale or entry or pre-emption other than to the company. Congress intended to withdraw from sale, entry or pre-emption all those lands set apart within specifically defined limits, as well those authorized to be selected as lieu lands, as those absolutely granted, in which the title itself presently vested. The right of selection indefeasible by pre-emptioners vested upon filing the map of definite location, and withdrawal, as provided by the statute, although the title to the land itself did not vest till the selection.

3. SAME—RIGHT OF SELECTION.
   The secretary of the interior had no authority, while a deficiency existed, to allow a pre-emption to be made upon an odd section within these indemnity limits. While such deficiency existed, the secretary could not throw open the odd sections within the indemnity limits to pre-emption, or homestead entry. The right of selection, in the company, to these lands, is given in the statute itself, and the secretary cannot revoke it.

4. SAME.
   This joint resolution of 1870 (16 St. 382) conferred no new rights upon a pre-emptor going upon these lands subsequent to the order of withdrawal. It only saved and reserved such rights as he had already acquired before its passage.

5. SAME—CLOUD ON TITLE.
   A patent issued in the name of the United States to a pre-emptor, entering upon these lands subsequent to the order of withdrawal, is, erroneously, issued, without authority of law, and is void. The existence of such a patent is a cloud upon the complainant's title. It embarrasses the assertion of complainant's rights, and prevents it getting a patent to the same land to which it is entitled. These circumstances constitute ground for equitable relief. A patent so issued to a pre-emptor is void, and the using of it should be perpetually enjoined.

6. SAME—SECRETARY OF INTERIOR.
   Where the secretary of the interior, acting upon a known and recognized state of facts, draws therefrom an erroneous conclusion of law, and, in pursuance of such erroneous conclusion, issues a patent to a party not entitled thereto, his action is not conclusive, but, is subject to review and reversal by the courts.

*(Syllabus by the Court.)*

This is a bill in equity seeking a decree declaring void and annulling a patent of the United States to a quarter section of land claimed by the complainant, as a part of the land granted to it to aid in the construction of its railroad under the act of congress of July 27, 1866, found in 14 St. 292. The land lies outside of the 20-mile limit, and within the 30-mile limit fixed by the statute, and being a portion of the land which the complainant was authorized to select to make up for any deficiency that might be found in the odd sections within the 20-mile limit by

reason of a prior disposition thereof, or the acquisition of prior rights therein.

The complainant filed its map of definite location in the proper office on January 3, 1867, and a subsequent map on September 3, 1871, covering substantially the same lines. A letter of the secretary of the interior, accompanied by a plat showing the 30-mile limit, withdrawing the lands from sale, entry or pre-emption, and so forth, in accordance with the statute, within the said 30-mile limits, was filed in the Stockton land-office on May 3, 1867, which plat and withdrawal included the lands in question. This withdrawal does not appear to have ever been revoked, or attempted to be revoked, either by congress or the interior department. The plat of the township embracing the land in dispute was filed in the proper land-office on March 19, 1881.

On May 19, 1881, the respondent, Wiggs, filed in the said land-office at Stockton, his pre-emption declaratory statement for the said land, claiming a settlement thereon on May 15, 1868, which date is more than a year after complainant filed its map of definite location. He made final proofs of said pre-emption on February 19, 1884, and received the patent therefor, now in question, on June 12, 1885. There was a contest in the land-office from the beginning, between the complainant and defendant Wiggs, over the latter's right to pre-empt the land, which being decided in favor of respondent was taken before the department at Washington on appeal; and in a decision rendered by the commissioner on January 28, 1882, respondent's right to pre-empt was affirmed.

This decision was affirmed by the secretary of the interior on November 27, 1883; and, in accordance with the determination of the secretary, the patent in question was issued to respondent on June 12, 1885. On July 9, 1885, the duly-authorized agent of complainant, having selected the lands so far as it could make a selection, without the concurrence of the department, presented in the Stockton land-office list No. 7 of lands selected by the Southern Pacific Railroad Company to make up deficiency, under and in pursuance of said statute of July 27, 1866, and tendered the full amount of fees receivable thereon, the full costs and expenses of survey having been paid, said list being in the usual form in use in such cases; and the register and receiver of said land-office rejected said list and selection, not on the ground that there was no deficiency, or of any irregularity in the form of proceeding, or in the selection, or that they were not otherwise subject to selection, but "for the reason that, as appears by the records of this office, said land was patented to Walter Wiggs, June 12, 1885." This was the sole objection assigned. Said list of said selected land embraced the land in question. The said patent is the patent issued as hereinbefore stated.

The complainant had, before said selection, built and completed its line of road opposite and beyond the said lands within the time, and in all respects in the manner, as required by law, and it had been accepted by the proper officers of the government.

*Joseph D. Redding,* for complainant.

*Joseph H. Budd,* for defendants.
Before SAWYER, Circuit Judge.

SAWYER, J., *(after stating the facts as above.)* Upon the facts stated, the question arises, whether the lands, under the statute, were open to pre-emption by the respondent, at the time he settled upon them, for the purpose of acquiring a pre-emption right, and whether the patent, upon fulfilling the other conditions, was lawfully issued to him; or whether, on the contrary, the complainant, by the acceptance of the land grant, filing its map of definite location and building the road in all respects in accordance with the requirements of the act of congress, did not from the date of filing its map of location acquire a right indefeasible by pre-emption claimants under the existing laws, to select this land in lieu of lands within the 20-mile limit, lost by reason of any of the causes enumerated in the statute. In *Ryan* v. *Railroad Co.,* 5 Sawy. 261, affirmed in 99 U. S. 382, it was held that, in a similar grant, the grant attached and title vested to the specific alternate sections designated by odd numbers within the 40-mile limit of that grant, on the filing of the plat of the surveyed line of the road with the secretary of the interior; and the withdrawal of the land from sale by him; but that the title did not vest in any particular division of land that might be selected outside the limit to make up a deficiency until said deficiency had been ascertained, and the selection in lieu thereof had been actually made. This decision has been repeatedly recognized since.

It is insisted on the part of the respondent that these decisions must control the case, as the lands are in the belt of lands liable to be selected as lieu lands only, and were not selected to supply a deficiency till after the settlement for the purpose of pre-empting, at which time the title under the decision had not vested. But I am of the opinion, that those decisions are not broad enough to reach this case. The ultimate question in those cases was quite different. In this case, the right to select, in the future, this land, in the part limited for that purpose, vested, should there turn out to be a deficiency, on filing the map of definite location, thereby fixing the limit of the district for selection, although no title to the land vested till selection. The precise question now involved is not, so far as I am aware, presented in any other case. The statute itself makes a specific grant of every alternate section within certain specified limits, to which no other right has attached at the time when the line of the road becomes definitely fixed; and in case some of the lands are lost by reason of prior interests having attached, it gives a right to select an amount equal to that so lost out of any odd sections of public lands free from other prior claims within other specified limits of no great extent. The right to select, at once vests, though the title to specific lands does not, till selection is made. And, to preserve that right of selection, the statute itself, in terms, provides, that said odd sections shall not be liable to sale, or entry, or pre-emption other than to the company; that no pre-emption right shall be allowed in those lands specified. The language of the statute is,

"That there be and hereby is.granted"—to the railroad company—"every alternate section of public land not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile, on each side of said railroad line as said company may adopt through the territories of the United States, and ten alternate sections of land per mile on each side of said railroad whenever it passes through any state, and whenever, on the line of the route, the United States have full title, and free from pre-emption or other claims or rights at the time the line of said road is designated by a plat thereof filed in the office of the commissioner of the general land-office."

And section 6 provides as follows:

"And be it further enacted, that the president of the United States shall cause the lands to be surveyed for forty miles in width on both sides of the entire line of said road after the general route shall be fixed, and as fast as may be required by the construction of said railroad; and the odd sections of land hereby granted shall not be liable to sale or entry or pre-emption before or after they are surveyed, except by said company, as provided in this act; but the provisions of the act of September, eighteen hundred and forty-one, granting pre-emption rights, and the acts amendatory thereof, and of the act entitled, 'An act to secure homesteads to actual settlers on the public domain,' approved May twenty, eighteen hundred and sixty-two, shall be and the same are hereon extended to all other lands on the said line of said road when surveyed, excepting those hereby granted to said company." 14 St. p. 294, § 3; page 296, § 6.

Thus, in express terms, it is provided, that the odd sections thus granted within the whole boundaries shall not be subject to sale, entry or pre-emption before, or after, they are surveyed, except by said company, as provided in this act. It is apparent that congress intended to preserve all these odd sections, within the space limited, till it could be ascertained what deficiency there would be; and the company could supply them by selections within the prescribed limits. It permitted sales and pre-emptions, within the prescribed limits, of even sections only. Congress. intended that the grants should be substantial. This case affords an illustration of the injustice of any other view. This map of definite location was filed on January 3, 1867, whereby the limits became fixed, and the right of selection upon the arising of the conditions, vested. The government did not file its plat of the survey till March 17, 1881, 14 years afterwards, and long after the completion of the road opposite the lands. Until this time it could not be ascertained whether any, or if any, what, deficiency would exist; and if it could be known, there could be no selection of odd sections to supply the deficiency until it could be known where the odd sections would fall, and this would require a survey. But if during all this time the lands were open to pre-emption the lands could all be taken up, while the hands of the complainant were tied. In this very case the respondent initiated his pre-emption claim by settlement in 1868, but did not, because he could not, file his declaratory statement till a short time after the filing of the plat in 1881, immediately after which the contest between him and the company, as to which had the right, commenced before the department, and it was followed up till finally decided, a short time. before the patent issued. If one pre-emptor can enter upon the land

wanted, and wait 10 years or more for a survey, and thereby acquire a right, while the railroad company must wait for a survey before it can make its selection and acquire a right thereby, all the lands can be in that manner wrested from the company; and of what use to it, under such conditions, would be the right to select given by the statute?

If such a right of pre-emption exists, while the company cannot act, all the lands which derive their greatest value from the very construction of the road, or its contemplated construction, could be wrested from the company, even after the road is constructed, by a failure of the government to make the survey.

Manifestly, I think, congress intended to withdraw from sale, entry or pre-emption, by parties other than the company, all those lands set apart within fixed limits, as well those authorized to be selected as lieu lands, and thereby preserve the right of selection, till selection was possible to be made, as those absolutely granted in which the title itself presently vested. No time was limited by the act for selection, or limitation of time put upon the express withdrawal, either by the act or the secretary of the interior. A right to select which could be cut off at the sole discretion of any pre-emptioner without any fault of the company, and without any power on its part to prevent it, would be illusory, and no right at all. By the statute the president was required to "cause the lands to be surveyed for forty miles in width,"—the whole 40 miles. And the odd sections granted within the whole 40 miles "shall not be liable to sale, entry or pre-emption before or after they are surveyed, except by said company, as provided in this act." It does not appear to me that this language is susceptible of more than one construction, and that is, that no pre-emption right could be perfected or initiated in the face of that prohibition till congress sees fit to withdraw it, while still in its power to do so, or till the whole claim of the company for deficiency is both ascertained and satisfied. As congress did not see fit to put any limitation upon the time for selection, neither the secretary of the interior, nor the courts, are authorized to prescribe such limitation.

In *U. S.* v. *Curtner*, 38 Fed. Rep. 1, and 14 Sawy. ——, this court held, the circuit justice and circuit judge concurring, that, under a similar grant, no other right than that of the railroad company could be acquired or initiated in any of the odd sections within the limits of the grant, after the filing in the proper office of the map of the general route of the road, and the withdrawal of the lands by the secretary of the interior; that the filing of such map of the general route and the withdrawal protected the lands from the acquisition of any right by any other parties till the routes should be definitely fixed, when the title would definitely vest in the odd sections of the specific grant (14 Sawy. ——, and 38 Fed. Rep. 1.) It was, also, held, that no pre-emption right, could be acquired, or even initiated, on any lands except those as to which such rights were expressly authorized by statute to be acquired, and *a fortiori* none can be acquired or initiated when there is, as in this case, an express statutory inhibition. In that case the lands were thus protected and withdrawn in a tract 10 miles wider than was necessary

for the grant after the line of the road became definitely fixed. The same rule was held with respect to pre-emption claims in *Railroad Co.* v. *Orton*, 6 Sawy. 198; *Buttz* v. *Railroad Co.*, 119 U. S. 55, 7 Sup. Ct. Rep. 100; *Denny* v. *Dodson*, 13 Sawy. 68, 32 Fed. Rep. 899; *Schulenberg* v. *Harriman*, 21 Wall. 44; *Missouri, K. & T. Ry. Co.* v. *Kansas Pac. Ry. Co.*, 97 U. S. 491. The principles thus established in my judgment cover and control this case.

The joint resolution of congress of June 28, 1870, (16 St. 382,) "saving and reserving all the rights of actual settlers," conferred no new rights upon respondent. It only saved and reserved such rights as he had already acquired under prior laws before its passage. But he had acquired no rights under prior laws at that time to protect, as the land, as we have seen, was not subject to pre-emption; and when he entered he was a mere trespasser against the express law of the land, and the rights of the complainant were in no wise limited by this resolution. Congress did not attempt to limit them; and it could not limit such rights as had already fully vested had it desired to do so. *Railroad Co.* v. *Orton*, 6 Sawy. 197 *et seq.*

The land, in the present case, was awarded by the department and patented to respondent expressly upon the authority of a decision of the secretary of the interior rendered in 1878, before the decision in *Orton's Case*, cited. *Orton's Case*, and those cited in the opinion of the court, and especially those cases since decided by the supreme court and cited in the present opinion, established a rule wholly inconsistent with that adopted by the secretary of the interior relied on, and necessarily overruled it.

Although the selection of the lieu lands were to be "made under the direction of the secretary of the interior," they were to be "selected by said company," not by him; nor was the selection required to be approved by him as is required by some other acts; and when there was a deficiency, and the company selected lands open to selection, there was no authority vested in the secretary to arbitrarily refuse to recognize and allow such selection. This would deprive the company of the right of selection expressly given by the statute, and vest it in the secretary, whereas the statute says in express terms, "other lands shall be selected by said company in lieu thereof."

It is urged that the matter of determining the rights of these parties was vested in the secretary, and that his action cannot be reviewed by the court, but is conclusive. I do not so read the decisions of the supreme court. There is no dispute about the facts here. The secretary acted upon a known and recognized state of facts, and on that state of facts drew an erroneous conclusion of law, and on those recognized facts gave the land to the respondent, whereas he should have awarded it to the complainant. He issued a patent to the respondent to land in which he had no legal right; a patent which, upon the known and recognized state of facts, he had no authority of law to issue.

It is urged, that if the claim of the complainant be established, it has the legal title, and an adequate and complete remedy at law, and that

there is no ground for equitable relief or jurisdiction. But this patent is a cloud upon the complainant's title, which it is entitled to have removed. The existence of the patent gives color of title and is recognized by the land department. Its existence embarrasses the assertion of complainant's right, and prevents it from getting a patent to the same land, to which it is entitled. These circumstances constitute ground for equitable relief. The remedy at law is not equally adequate and complete. *Van Wyck* v. *Knevals*, 106 U. S. 370, 1 Sup. Ct. Rep. 336; *Pixley* v. *Huggins*, 15 Cal. 128.

Let there be a decree for complainant, in pursuance of the prayer of the bill, adjudging respondent's title to be void and annulling it; that there be a perpetual injunction against his using it, or setting up any claim of title or right under it, and that he convey to the complainant any right he may have, or claim to have, under it.