JOHN L. GRANDIN and WILLIAM J. GRANDIN, Plaintiffs and Respondents, *v.* E. G. LABAR, Defendant and Appellant.

### Appointment of Receiver—Notice—Ex parte Application.

1. In an action in equity to quiet title to real estate, and enjoin the defendant, who resided upon and cultivated the land as a farm, pending the action and permanently, from tilling the land in question, the complaint was verified only on information and belief, and by one of plaintiff's attorneys. A verified answer was served, denying the facts and equities set out in the complaint. After the service of the answer, and before a trial was had, the plaintiffs, without notice to defendant or his counsel, applied to the district court for an order appointing a receiver of the crops planted by the defendant and growing upon the land. An *ex parte* order was made appointing such receiver. The application was based upon an affidavit setting out, among other things, defendant's insolvency, and that the crops were "liable to be mortgaged," but no attempt was made to support the original equities set out in the complaint. *Held*, that such appointment was error.

2. Where, in such cases, plaintiffs' original equities are denied by answer, and are without support from evidence extrinsic to the complaint, a receiver should not be appointed, even after notice and a hearing; much less should the defendant be dispossessed summarily by *ex parte* proceedings.

3. The practice of appointing receivers *ex parte* is not tolerated by the courts except in cases of the gravest emergency, and to prevent irreparable injury.

(Opinion Filed Oct. 30, 1891.)

*A*PPEAL from District Court, Traill County. Hon. WIL-LIAM B. McCONNELL, Judge.

*J. E. Robinson,* for appellant. *Carmody & Leslie,* for respondents.

Action in equity by John L. Grandin and William J. Grandin against E. G. LaBar to quiet title to land. Before trial, and without notice to defendant, a receiver was appointed to take the crops planted by defendant on the land, and from the order making such appointment defendant appeals. Reversed.

J. E. Robinson, for appellant:

The appointment of the receiver *ex parte* was error. It is only in cases of the greatest emergency that such should be done. High on Receivers, § 111; Verplank v. Insurance Co., 2 Paige 438; Sanford v. Sinclair, 8 Paige 373; People v. Railroad Co., 55 Barb. 34; Id v. Id, 38 How. 228; Field v. Ripley, 20 How. 26; Bison v. Curry, 35 Iowa 72; French v. Gifford, 30 Iowa 148; Blondheim v. Moore, 11 Md. 452; Whitehead v. Wooten, 43 Miss. 523; Rogers v. Dougherty, 20 Ga. 271; Wusbaum v. Stein, 12 Md. 315; Field v. Ripley, 20 How. 26; How v. Ripley, 18 How. 138. Where an injunction is ample to protect the property until a motion can be made for a receiver, it is improper to deprive a party of possession without notice. McCarty v. Peake, 18 How. 140. See also People v. Simonson, 10 Mich. 335; Salling v. Johnson, 25 Mich. 489; Port Huron v. Judge, 31 Mich. 456; McCombs v. Merryhew, 40 Mich. 725; Arnold v. Bright, 41 Mich. 207; Railroad Co. v. Judge, 44 Mich. 482; Jones v. Schall, 45 Mich. 379; Book v. Railroad Co., 45 Mich. 453. A suit in equity cannot be maintained when full relief can be obtained at law. Hipp v. Babin, 19 Howard 271; Parker v. Manufacturing Co., 2 Black 545; Grand Chute v. Winegar, 15 Wall. 373; Lewis v. Cocks, 23 Wall. 466; Killian v. Ebbinghaus, 110 U. S. 568. The complaint in this action is framed as a bill in equity and avers that plaintiffs have no remedy at law. At law they cannot succeed for want of a legal title. Hardin v. Jordan, 140 U. S. 371. In actions for the possession of realty a receiver may not be appointed. Sedgwick &

Wait on Trial of Titles to Land, §§ 631, 632; High on Receivers, §§ 553, 557 and cases cited.

Carmody & Leslie, for respondents:

A receiver may be appointed *ex parte.* Williams v. Jenkins, 11 Ga. 595; Maple v. Scot, 4 Ill. App. 268; Gregory v. Gregory, 33 N. Y. Sup. Ct. 1; Association v. San Francisco, 60 Cal. 223.

The opinion of the court was delivered by

WALLIN, J.   On June 29, 1891, after issue was joined in this action by service of an answer denying the material allegations of the complaint, but before trial, the district court, on plaintiff's application and by an order made herein, wholly *ex parte*, appointed a receiver of certain growing crops which were sown by defendant upon the lands in question, upon which the defendant then resided and long had resided. Upon due notice defendant moved in the district court to vacate the order appointing a receiver. The court denied the motion to vacate such order, and in the order denying the motion the district court enlarged the powers of the receiver by making him receiver of the land in controversy, as well as the crops thereon. The case comes to this court on appeal from each and all of said orders.

The action is brought in equity, to quiet title to land. The specific relief prayed for by plaintiffs as follows: "For judgment decreeing that these plaintiffs are the equitable owners of the land; that defendant has no right, title, or interest therein; that the defendant be restrained, during the pendency of the action, and permanently restrained from tilling said land, or in any manner interfering with the same. Plaintiffs also pray generally for other and further relief." The complaint further states, in substance, that the land—the S. W. ¼ of section 7, township 146, range 50 west—is in Traill county, and situated within fifty miles of the line of the Northern Pacific Railroad as such road is finally located and built and situated, within the ten-mile limit of said railroad, commonly called the "indemnity belt." That said tract is "among the lands, from which the said company were given the right to select lands in lieu of lands which

were within the original land grant of twenty alternate sections on each side of said road," and which were, at the time the company filed its map of definite location, not available to the company by reason of having been previously reserved, sold, granted, settled upon, or otherwise appropriated by the United States government. The complaint alleges, in effect, that prior to the filing of any map of definite location by the railroad company, large quantities of the land within the original limits had been settled upon, reserved, and otherwise disposed of by the government, and that, in consequence thereof, the railroad company had, under the provisions of the acts of congress relating thereto, become entitled to select lands—odd-numbered sections—within the ten-mile limit in lieu of such lands in place as were lost to the company as aforesaid. The complaint further states that after it became known that quantities of land had been lost to the railroad company as aforesaid, "the secretary of the interior directed the manner in which the said railroad company should select the lands in lieu of those so lost; and that, in accordance with the directions so given by the secretary of the interior, the said railroad company did make selection of lands in lieu of many of the lands so lost by them, and in and among other parcels of land the said Northern Pacific Railroad Company did select the particular land above mentioned in making such selection in the manner as directed by the secretary of the interior; and that at the time of the making of such selection as aforesaid the land was wholly unoccupied, and was not subject to any contests, and had not been in any way disposed of or alienated by the United States, but at the time of the said selection thereof the said United States had full title to said land." The complaint avers that after the land in question had been selected by the company as above stated, and in September, 1876, the railroad company sold and conveyed the same to the plaintiffs, and that ever since such conveyance to plaintiffs "they have been the owners of said land in equity if not law," and have a right to a deed patent to the same. The complaint also states that long subsequent to such conveyances to plaintiffs, to-wit, in the month of October, 1887, "the defendant wrongfully and unlawfully entered upon

said land, and has ever since that time been wrongfully and unlawfully in the possession of said land, and has cultivated and broken and harvested and raised crops on said land, and is injuring the same, and sapping the said land and the soil thereof of its goodness and strength, and doing great and irreparable injury to the said land and to the right of possession thereof." The complaint further charges that the defendant is wholly insolvent and financially irresponsible. The complaint is verified on information and belief by C. E. Leslie, one of the plaintiffs' attorneys, but the affidavit of verification fails to state why it was so verified, or why it was not verified by plaintiffs.

Defendant answered the complaint, and, after admitting the incoporation of the Northern Pacific Railroad Company, further answered: "Defendant further answering the complaint herein, denies that he has any knowledge or information thereof sufficient to form a belief, and, therefore, denies each and ever allegation not specifically admitted or otherwise denied. Defendant alleges that on the 20th of September, 1887, he, being a married male person and the head of a family, and over the age of twenty-one years, and a citizen of the United States, made settlement in person with his family, consisting of a wife and four children, upon the land described in the complaint. That said land was and is public land of the United States, not mineral, and subject to pre-emption. That said lands, with other lands, were declared to be a part of the public domain, and open for settlement under the general laws of the United States, by an order of the honorable secretary of the interior, duly made on August 15, 1887. That defendant settled peaceably upon said land. That it was then wholly unoccupied, wild prairie land, and without any improvements of any kind or nature whatsoever, and this defendant settled peaceably upon said land as a pre-emptor, and duly filed his declaratory statement of his intention to claim said land as a pre-emption right under the laws of the United States in the United States land office at Fargo, N. D., on the 20th of October, 1887. That he then established his residence on said land, and has inhabited, cultivated, and improved the same continuously since said date, and has erected a dwelling house, barn, and other build-

ings thereon, dug a well, and made improvements to the value of $2,000. That in the United States land office, before the honorable commissioner of the general land office, a contest is now pending to determine the rights of the parties herein to said land, in which E. G. LaBar is plaintiff, and the Northern Pacific Railroad Company, the alleged grantor of plaintiffs, is defendant. That no patent for said tract of land has been granted by the United States to any person whomsoever. That no improvements have been made on said tract by the plaintiffs or any other persons whatsoever, save such as made and owned by defendant. That no person other than this defendant and his family have ever been or are in actual possession of said land or any part thereof." The answer, it appears, joins issue on all material allegations of fact set out in the complaint as grounds of action and also pleads affirmatively a state of facts, which, if true, fully justifies the defendant in settling upon the land and in continuing to reside upon and cultivate the same as a pre-emption settler. If it be true, as claimed by counsel, that the court will take judicial notice that this tract of land is situated within the said "indemnity limits," it will still be necessary to prove at the trial that said railroad company, after losing certain of its lands in place within the original limits of its grant fixed by law, did, with the approval of the secretary of the interior, select, among other lands the tract in question in lieu of such lost lands, and made such selection when such tract was free from all other lawful claimants thereof; and if after such selection, the land was, before the entry of defendant, conveyed to these plaintiffs, as alleged in the complaint, then it would follow that the plaintiffs would be in a position to apply to the courts for appropriate relief as against the defendant. But all of these essential averments of fact are put squarely in issue by the pleadings. As the case has never been tried on the merits in the court below, it would be improper for this court to enter upon a discussion of the merits of the issues presented by the pleadings, particularly as the questions most material in the case are matters of pure fact. Elling v. Thexton, 7 Mont. 330, 16 Pac. Rep. 931.

The record shows that the action was commenced July 30, 1890, by the personal service of the summons and complaint. An injunctional order was also served upon defendant at the same time. This order—after a hearing, which was had on August 5, 1890—was so modified as to permit defendant to harvest the crop then growing upon the land, but forbade defendant from doing any plowing or other acts looking towards a further tilling or cropping of the land. The injunctional order was disobeyed by the defendant, and he was brought before the district court in November, 1890, and a fine of $10 was entered against defendant for the contempt involved in disobeying such injunctional order. It appears that the fine was not paid, and no attempt was made to enforce its payment. In April, 1891, the defendant began seeding the land, and, that fact being made to appear by affidavit, the district court cited defendant into court to show cause on April 20, 1891, why he should not be punished for contempt in that he had disobeyed said order of the district court made on August 5th preceding. On the hearing the defendant showed cause by affidavit setting out the facts and circumstances of his occupation of the land in detail, and justifying such occupation upon substantially the same grounds stated in his answer. The district court—Judge TEMPLETON presiding by request—discharged the defendant, and did not punish him for the alleged contempt. On the 25th of June, 1891, an order was made appointing one H. D. Hurley receiver in the action, "with full power to harvest the crops now growing on said land, and to secure and thresh the same, and to hold the proceeds thereof, after paying the expenses of harvesting, threshing, and marketing the same, subject to the further order of the court, upon his executing a bond, as required by statute, in the sum of $1,000, and taking oath as required by law." This order was wholly *ex parte*. The order appointing a receiver was served upon defendant in Traill county on July 29, 1891. The order purports on its face to be made wholly upon affidavit. It reads: "On reading the foregoing affidavit and considering the same." We find that the affidavit referred to in the order was made by C. E. Leslie, Esq., the same attorney who verified the complaint on information and belief. It will be unnecessary

to set out the affidavit at length. It will suffice to say that it does not attempt to set out nor refer to any facts tending in the least to corroborate the material facts stated in the complaint, and constituting plaintiffs' alleged cause of action and their equities. The affidavit does state that defendant has disobeyed the injunctional order of August 5, 1891; reiterates the alleged insolvency of defendant; that the crop is liable to be mortgaged; and alleges that plaintiffs will be remediless if a receiver of the crop is not appointed; "that the issues are so involved with the proceedings being had in the land department and before the secretary of the interior of the United States that it is very doubtful if the issues herein can be determined at the next term of this court," etc. On August 6, 1891, a motion was made before the district court on the pleadings and proceedings then had herein to set aside and vacate the order appointing H. D. Hurley receiver. At the hearing of the motion both parties were represented in court by counsel. The motion was based upon the following grounds: (1) Because said order was made *ex parte*, and without any notice to defendant; (2) because the records and proofs show no ground for the appointment of a receiver." In deciding the motion the following order was made: "Ordered that the above motion be, and the same is hereby denied; and on motion of plaintiffs, H. D. Hurley is appointed receiver of said land, as well as the crops thereon, during the pendency of this suit." The making of all of the said orders is assigned as error in this court, and we are called upon to determine whether they were legally and properly made, and nothing further.

We have no doubt for various reasons that it was an abuse of discretion to make the *ex parte* order appointing a receiver of the crops sown and planted by defendant upon lands where defendant long had resided. The affidavit upon which the order was made showed no exigency which would justify such an arbitrary and harsh proceeding, if, indeed, it would be proper in such a case to appoint a receiver at all before judgment. Where an injunction is ample to protect property until a motion can be made for a receiver, it is manifestly improper to deprive a party of possession without notice. McCarty v. Peake, 18 How.

Pr. 139, 140. In this case it would seem quite unnecessary, on plaintiff's theory of the case, to resort to the appointment of a receiver in any event. The complaint is framed upon the theory that the plaintiffs, upon the facts set out, can invoke a preliminary as well as a permanent injunction restraining defendant from tilling or interfering with the land in question. This is the relief specifically demanded in the complaint, and plaintiffs applied for and obtained a preliminary injunctional order, which was served upon defendant long before the receiver was applied for, to-wit, in 1890. This order has not been appealed from, and, as modified, it in terms forbade the defendant from tilling the land or planting any crop thereon. If the plaintiff's theory of the case is sound—and the district court seems to have adopted it in issuing the preliminary injunction—then such order, not having been appealed from, could have been enforced. If the order had been enforced, the crop placed in the hands of the receiver could not have been planted nor harvested by defendant, and no receiver would have been necessary. Why the injunctional order was not enforced does not appear in the record, but it is quite clear to our minds that, if such an order could not be enforced under the complaint, the more drastic remedy of a receiver would be improper on the same state of facts. Much less was it proper, under such circumstances, to deprive defendant of the possession of the crops without notice or a hearing, when defendant, who was living on the land, could have been notified of the application. In Verplanck v. Mercantile Ins. Co., 2 Paige, 450, Chancellor WALWORTH says: "In every case where the court is asked to deprive the defendant of the possession of his property without a hearing, or an opportunity to oppose the application, the particular facts and circumstances which render such summary proceedings proper should be set forth in the bill or petition upon which such application is founded." See, also, French v. Gifford, 30 Iowa, 148. The affidavit upon which the summary order was made in this case failed to state any facts or circumstances tending to show that summary action without notice was necessary. The statement that defendant was liable to

mortgage the crop was the mere opinion of plaintiff's counsel, not supported by any facts alleged.

It is doubtless true that receivers are sometimes—though very rarely—appointed *ex parte*. Our statute (§ 5017, Comp. Laws), contemplates such a possibility. But to justify such a summary proceeding the facts and circumstances must create a very grave exigency, and above all, the application must be of such a strong and convincing nature that the court is reasonably certain to decide the case finally in favor of the applicant. "In suits between conflicting claimants of land, especially between parties claiming under legal titles, a receiver will not ordinarily be appointed." 3 Pom. Eq. Jur. § 1333. See, generally, High, Rec. § 111; Sedg. & W. Tr. Title Land, § 631. Plaintiff does not show a case coming within either of the classes mentioned in the statute (§ 5015, Comp. Laws), in which a receiver is expressly authorized, nor do the facts set out show that this is a case where "receivers have heretofore been appointed by the usages of courts of equity." Railroad Co. v. Iosco Circuit Judge, 44 Mich. 479, 7 N. W. Rep. 65. But the appointment of the receiver in the case at bar, even if notice had been given and a hearing granted, would have been in flagrant violation of established practice in such cases. The plaintiffs' equities, as stated in the complaint, are not supported by the plaintiffs' affidavit or otherwise; nor is the complaint verified by any person who claims to have personal knowledge of the facts set out. The verification is made on information and belief by one of plaintiffs' attorneys, if the pleading can be properly considered as verified by an attorney where, as in this case, the affidavit fails to state, as the statute requires, why the attorney verified it. The *ex parte* order shows on its face that it was based on an affidavit of the same attorney who attempted to verify the complaint; but such affidavit, as already stated, does not anywhere allude to the original grounds of the action. But if the complaint was before the court, and constituted a part of the showing made by plaintiff, the result is that the *ex parte* order ousting defendant of the possession of crops planted by him and growing upon the land upon which he had long resided, and the orders enlarging the powers of the re-

ceiver by making him receiver of the land as well as the crops, were based only on equities set out in a complaint verified by attorney on information and belief, and such orders were made also after a verified answer had been served, putting the material facts and equities pleaded in the complaint in issue. High, Rec. § 24. Under the circumstances, the several orders were improperly made, and made in violation of well-settled and salutary rules of practice. The orders must be reversed, and it will be so ordered. All concur.