## Wood v. Railroad Company.

1. The grant of ten odd-numbered sections of land per mile to the Burlington and Missouri River Railroad Company by the act of July 2, 1864, c. 216 (13 Stat. 356), was *in præsenti*, and although not expressly requiring them to be taken within any specific lateral limit, necessarily implied that they should consist of those nearest to the line of road upon which the grant could, consistently with its exceptions and reservations, take effect.

2. Where the odd-numbered sections within the limit of twenty miles from the line were, conformably to the act, withdrawn, — *Held*, that so much of the land thereby embraced as was not sold, reserved, or otherwise disposed of, or to which, a pre-emption or a homestead claim had not attached, was subject to the grant, and that no right in conflict therewith could be thereafter acquired.

3. *United States* v. *Burlington & Missouri River Railroad Co.* (98 U. S. 334) commented on.

APPEAL from the Circuit Court of the United States for the District of Nebraska.

This was a suit in equity brought by William H. Wood against the Burlington and Missouri River Railroad Company, wherein he prays for a decree adjudging that the legal title to certain land, being a portion of section 13, township No. 8, range 7, in Lancaster County, Nebraska, is vested in him.

The bill alleges that on Feb. 1, 1866, one Robert Beall made a pre-emption filing and an entry upon the land in question, and resided thereon from Feb. 1, 1866, to June 27, 1867, made valuable improvements, but afterwards abandoned it; that, May 24, 1871, the complainant duly made a homestead entry thereon, and complied with the laws so as to entitle him to a patent therefor, had it not been for the grant to the Burlington and Missouri River Railroad Company by the act of Congress approved July 2, 1864; that on or about Jan. 31, 1877, he made the requisite final proof to entitle him to a patent, but that the Land Department rejected his application therefor, on the ground that the land had been approved to the company by virtue of that act; that the company duly accepted the grant, and on June 15, 1865, filed with the Secretary of the Interior a map showing the location of the line whereon the road was built; that the land is within twenty miles thereof, and on or about April 8, 1875, was, through mistake and erroneous construction of law, selected for, and patented to, the company.

A demurrer to the bill having been sustained and the bill dismissed, Wood appealed to this court.

*Mr. John I. Redick*, *Mr. W. J. Connell*, and *Mr. E. E. Brown* for the appellant.

No counsel appeared for the appellee.

MR. JUSTICE FIELD delivered the opinion of the court.

The grant to the Burlington and Missouri River Railroad Company, by the act of Congress of July 2, 1864, c. 216, was of ten sections of land for every mile on each side of the line of its road when located, such sections to be designated by odd numbers, and the land to be only taken which, at the time the line was definitely fixed, had not been sold, reserved, or otherwise disposed of by the United States, and to which a pre-emption or homestead claim had not attached. The grant

was one of quantity, without any designation, in express terms, of any lateral limit on either side of the road, within which the land was to be selected. In this respect it differed from nearly all other grants of land made by Congress in aid of the construction of railroads. Other grants usually prescribed a lateral limit. The omission in that case was not accidental. Nearly all the land within the distance usually prescribed as a limit had already been disposed of to another railroad company, or, from the general settlement of the country, was likely to be appropriated before the line of the road could be definitely located. In order, therefore, that its proposed aid might not be defeated, Congress allowed the land granted to be taken on the line of the road wherever it could be found, without regard to the distance from its line to which the grantee might be compelled to go to satisfy its grant, by reason of previous appropriations.

Although there was no express limitation of the distance from the road in which the land was to be selected, it was necessarily implied that the selection should be made of alternate sections nearest the road, of which the land had not been previously sold, reserved, or otherwise disposed of. The company was not at liberty to pass beyond land open to its appropriation, and take lands farther removed from its road. In all grants which are to be satisfied out of sections along a line of a road, it is necessarily implied, in the absence of specific designation otherwise, that the land is to be taken from the nearest undisposed sections of the character mentioned. Such grants give no license to the grantees to roam over the whole public domain lying on either side of the road, in search of land desired. The grants must be satisfied out of the first land found which meets the conditions named.

The line of the defendant's road was definitely located in June, 1865. The land consisting of the alternate sections designated by odd numbers within a limit of twenty miles was withdrawn from sale in July following, and so much of it as had not been previously sold, reserved, or otherwise disposed of, or to which a homestead or a pre-emption claim had not attached, was thus appropriated to the satisfaction of the grant. It could not be subsequently applied to other purposes or

devoted to the claim of private parties. It was immediately taken by the grant, and would have been sufficient to satisfy it in full, if no portion of the odd sections had been previously disposed of, or subjected to other claims. And the grantee could only go beyond that limit when it was found that there was a deficiency remaining after all within it had been appropriated.

The grant was one *in præsenti*, and when the sections granted were ascertained, the title to the land took effect by relation as of its date, except as to the reservations named. The land to which the complainant asserts a homestead claim is embraced in one of the sections within the twenty-mile limit; his claim, therefore, necessarily falls before the superior right of the company. Its estate had become vested when he took the initiatory steps to secure a homestead right.

The contention of the complainant, so far as we can understand his position, is this: That as there was no lateral limit expressed in the act of Congress, within which the land granted was to be selected, therefore it might be selected at any distance from the road, and that no appropriation could be considered as made, or any estate deemed to be vested, until the sections were actually selected, that is, until the patent of the United States was issued. This notion arises from a misconception of the language of our decision in the case of the United States against the same company, reported in 98th U. S. It there appeared that within the twenty-mile limit there was not sufficient unappropriated land to meet the grant, and accordingly the company made application to the Land Department for land outside of that limit for the balance, and patents for such balance were issued to it. A suit was afterwards brought by the United States to cancel those patents. We there held, as in this case, that the grant was one of quantity, and we observed that the land was subject only to these limitations: *First*, that the land must be embraced by the odd section; *second*, that it must be taken in equal quantities on each side of the road; *third*, that it must be on the line of the road; and, *fourth*, that it must not have been sold, reserved, or otherwise disposed of by the United States, and a pre-emption or homestead claim must not have attached to it at the time the

line was located. And we said that the terms of the grant did not require the land to be contiguous to the road; and if not contiguous, it was not easy to say at what distance the land to be selected would cease to be along the line. This language was used with reference to the objection in the case, that land could not be taken beyond the twenty-mile limit, where all within that limit had been previously exhausted. We did not intend to intimate that the land granted could be taken at any distance, without regard to previous appropriations, but only that land could be thus taken where, from previous appropriations, as in that case, the grant could not otherwise be satisfied.

*Decree affirmed.*