UNITED STATES v. ECCLES et al.

(Circuit Court, D. Utah. November 4, 1901.)

No. 364.

1. Public Lands—Right of Railroad Company to Cut Timber — Construction of Statute.

Act March 3, 1875 (18 Stat. 482), granting right of way for railroads over the public lands, which confers on a company so constructing its road, "which shall have filed with the secretary of the interior a copy of its articles of incorporation and due proofs of its organization under the same," the right to take timber and other materials for the construction of its road from public lands adjacent to its line, confers no right to cut timber for such purpose prior to the filing of the required papers, nor does the subsequent use in the construction of the road of timber so cut render the cutting lawful, or devest the title of the United States

thereto, since the act does not give the right to appropriate timber already cut.

2. SAME—ACTION FOR UNLAWFUL CUTTING OF TIMBER—DEFENSES.

Where defendants, in an action by the United States to recover the value of timber cut from public lands, defend on the ground that the timber was taken for use in the construction of a railroad, as authorized by Act March 3, 1875, the burden rests on them to bring themselves within the provisions of such act; and when it appears that at least a part of the timber was cut before the railroad company had filed its articles and proof of organization with the secretary of the interior, so as to be entitled to take timber for its use, it is incumbent on the defendants to show what part, if any, was cut after that time.

3. SAME—MEASURE OF DAMAGES.

Defendants, who unlawfully cut and removed timber from public lands, but believing, in good faith, that they had the lawful right to cut the same, although negligent, are liable only for its value as it stood in the trees.

At Law.

C. O. Whittemore, U. S. Dist. Atty.

L. R. Rogers, for defendants.

MARSHALL, District Judge. This action was brought by the United States to recover damages for the taking of certain timber from public land by defendants. The taking of the timber was admitted, and the defendants claimed that it was taken from the land adjacent to the line of the St. Anthony Railroad, and assert the right to so take it for the original construction of said railroad. A jury was waived, and a trial had before the court upon a stipulation of facts and oral testimony. It was stipulated that the defendants took from the public land of the United States, between July 20, 1899, and November 4, 1899, timber amounting to 935,000 feet of lumber, board measure, which was worth $2.50 per thousand feet standing in the trees; that the St. Anthony Railroad Company filed its articles of incorporation and proofs of its organization thereunder with the secretary of the interior on September 30, 1899; and that the lumber obtained from this timber was actually used in the original construction of the railroad of said company. I do not find it necessary to decide whether or not the land from which this timber was taken was in fact adjacent to the line of the railroad.

Two questions only need to be considered: (1) Does the act of March 3, 1875, give any right to the timber taken prior to the filing of the articles of incorporation and proofs of organization of the railroad company? (2) Should the damages be measured by the value of the timber before such value was enhanced by the acts of the defendants, or by the value after such increase and at the time when the lumber was delivered to the railroad company?

The defendants attempt to justify the taking of the timber under the act of March 3, 1875, which grants to certain railroad companies "the right to take from the public lands adjacent to the line of said road material, earth, stone and timber necessary for the construction of said railroad." 18 Stat. 482. This grant is limited to any railroad company "which shall have filed with the secretary of the interior a copy of its articles of incorporation and due proofs of its organization

under the same." The statute is an offer on the part of the government to induce the building of railroads through the public lands of the United States. It points out the method of acceptance. The grant is only to the railroad companies that communicate to the United States their acceptance of the offer by filing the prescribed papers with the secretary of the interior. Until this is done the railroad has no right to cut timber upon the public lands, and therefore can confer no such right upon others.

In this case the taking of at least a part of the timber preceded the filing of the required papers. Nor did the use of the lumber by the railroad company after it had filed its articles and proofs of its organization with the secretary of the interior purge the act of the defendants of its wrongful character. When the defendants took the timber their act was unlawful. The timber remained the property of the United States. This was also true as to the lumber manufactured from it. The title of the United States thereto could only be devested with their consent. The statute does not give to a railroad company the right to appropriate any timber already cut, or any manufactured lumber, the property of the United States, but only to go on the public land adjacent to the line of its road, and take timber in its natural state. This does not result from any strict construction of the grant, but is its evident meaning. The decision of the circuit court of appeals of this circuit in U. S. v. Price Trading Co., 109 Fed. 239–243, is controlling on this point.

It therefore follows that as to all of the timber cut prior to the 30th day of September, 1899, the date of the filing with the secretary of the interior of the articles of incorporation of the railroad company and the requisite proofs of its organization, the defendants could gain no right under the grant to the railroad. But there is no way, under the stipulation of facts and the evidence in this case, to discriminate between the timber cut before September 30, 1899, and that, if any, cut thereafter. The stipulation is that it was all cut and carried away between July 20 and November 4, 1899, and it may well be that all was in fact taken before September 30, 1899.

The defendants are seeking to justify the taking of this timber. The burden is on them to show that an act prima facie a wrongful invasion of the plaintiffs' right of property was in fact authorized by the statute in question. The means of proof were in their power. It is only to the extent that it is proven that the timber was taken after September 30, 1899, that their defense can be maintained. The evidence fails to show that any of it was so taken. It follows that the plaintiffs are entitled to a judgment for the entire amount of timber taken.

The question as to the measure of damage remains. The defendant Spencer, as between the two defendants, appears to have taken special charge of this business. He testifies that he consulted the attorney for the railroad company, and was told that the company had or would file the necessary papers with the secretary of the interior, and that the defendants would be entitled to cut the timber in question. He made no further inquiry, but believed that he had the right to take the timber. The circumstances surrounding the trans-

action all tend to show the good faith of the defendants. It may be that they were negligent in not ascertaining before commencing to take the timber that the papers had actually been filed. But negligence is not the same thing as bad faith, although some evidence of it.

In most cases of inadvertent trespass there is found negligence, but this does not prevent the operation of the rule that the value added to the property of another by the inadvertent act of the trespasser, in the belief that he was lawfully exercising a right, shall be excluded in the estimate of damages for the conversion. Durant Min. Co. v. Percy Consol. Min. Co., 35 C. C. A. 252, 93 Fed. 166-168.

I am of the opinion that the plaintiffs are only entitled to recover the value of the timber standing in the trees at the time of the taking, and before the acts of the defendants had increased its value, together with legal interest from November 4, 1899, as damages for the time during which plaintiffs have been deprived of their property. Mining Co. v. Old, 38 C. C. A. 89, 97 Fed. 150.

Judgment will be entered for the plaintiffs for $2,362.50 principal, and $378 interest, making a total of $2,740.50.