## UNITED STATES v. MULLAN FUEL CO.

### (District Court, D. Montana. November 13, 1902.)

### No. 40.

1. PUBLIC LANDS—ACTION FOR UNLAWFUL CUTTING OF TIMBER—LANDS WITHIN RAILROAD GRANT.

   The United States cannot maintain an action to recover the value of timber cut and removed from unsurveyed land within the limits of a railroad grant, and which, when surveyed, would be within the limits of an odd-numbered section, to which the government had parted with its title.

2. SAME—DEFENSES—PLEADING.

   To authorize the cutting of timber on public lands, under Act June 3, 1878 [U. S. Comp. St. p. 1528], which permits the cutting of timber from mineral lands in certain states and territories by bona fide residents thereof for building, agricultural, mining, and other domestic purposes, under regulations prescribed by the secretary of the interior, a compliance with such rules and regulations as the secretary had power to adopt is necessary, and one relying upon the license given by said act as a defense to an action for the unlawful cutting of timber should set out in his answer the acts done in compliance with such regulations, and all the facts necessary to constitute the license.

3. SAME—ACT PERMITTING CUTTING OF TIMBER FOR DOMESTIC PURPOSES—REGULATIONS OF SECRETARY.

   The limits of the power of the secretary of the interior to make rules and regulations governing the cutting of timber from public mineral lands for certain purposes, authorized by Act June 3, 1878 [U. S. Comp. St. p. 1528], subject to such rules and regulations as the secretary may prescribe "for the protection of the timber and of the undergrowth growing upon such lands and for other purposes," have never been judicially determined, but the act should be liberally construed, and the regulations must be reasonable, and not such as to annul or limit its effect.

4. SAME—PLEADING FACTS IN MITIGATION OF DAMAGES.

   Under Code Civ. Proc. Mont. § 700, a defendant, in an action in a federal court in that state to recover the value of timber alleged to have been unlawfully cut from public lands, who desires to prove his good faith in mitigation of damages, must plead such defense and such facts as he expects to prove in support of it.

5. SAME—ADVICE OF COUNSEL.

   An action by the United States for an alleged willful trespass in the cutting and removal of timber from public lands is one in which exemplary as well as actual damages may be recovered; and it is competent for the defendant, in support of a plea of good faith and to prevent such damages, to show that he acted under the advice of counsel.

At Law. Action of trespass by the United States for the unlawful cutting of timber from public lands. On motion for new trial.

William B. Rodgers and Carl Rasch, U. S. Attys.

Cullen, Day & Cullen, for defendant.

KNOWLES, District Judge. In this action the plaintiff seeks to recover from defendant the sum of $30,000 as damages for cutting timber upon sections 29 and 30, in township 11 N., range 6 W. of the principal meridian in Montana, situated in Powell county, in said state. The plaintiff alleges that it was the owner of this land. The defendant admits that plaintiff is the owner of said section 30, but denies that it is the owner of said section 29, and avers that this last-

mentioned section is the property of the Northern Pacific Railway Company. Defendant also admits that during the period named in plaintiff's complaint it entered upon what, when surveyed, would be section 30, above described; but it denies that its entry upon said land was unlawful or wrongful, or that it unlawfully or wrongfully cut down the timber growing thereon, or that at any time it cut 15,000 cords of wood, or any other number of cords of wood in excess of 500, or that it converted to its own use any timber growing upon said lands in excess of 500 cords, or that the wood so cut or converted by the defendant was of the value of $30,000 or any other value, and denies that the plaintiff was damaged in the sum of $30,000 or in any sum whatever. Defendant also alleges in its answer that said section 30, at the time said wood was cut, was public mineral land, not subject to entry under any of the existing laws of the United States, except mineral entries, and defendant cut said wood for mining and domestic use in the state of Montana, and no part of said wood was used for any other than the said mining and domestic purposes by bona fide residents of said state of Montana. The plaintiff in its replication joins issue as to the affirmative matters alleged in defendant's answer.

It appears from the evidence that the section 29 described in plaintiff's complaint was an odd section of unsurveyed land, and that if surveyed it would be within the limits of the Northern Pacific Railway Company's land grant. The government had therefore parted with its title to that section. It is difficult, under the decisions of the federal courts, to understand why a suit should have been brought for damages to that section of land, as the government had parted with its legal title to the same. The following cases establish this doctrine: Leavenworth, L. & G. R. Co. v. U. S., 92 U. S. 741, 23 L. Ed. 634; Missouri, K. & T. R. Co. v. Kansas Pac. R. Co., 97 U. S. 491, 24 L. Ed. 1095; Wood v. Railroad Co., 104 U. S. 329, 26 L. Ed. 772; Buttz v. Railroad Co., 119 U. S. 66, 7 Sup. Ct. 100, 30 L. Ed. 330; Wisconsin Cent. R. Co. v. Price Co., 133 U. S. 509, 10 Sup. Ct. 341, 33 L. Ed. 687; Barden v. Railroad Co., 154 U. S. 288, 14 Sup. Ct. 1030, 38 L. Ed. 992; Denny v. Dodson, 13 Sawy. 66, Fed. Cas. No. 899; Railroad Co. v. Cannon (C. C.) 46 Fed. 224. Other cases might be cited to the same effect.

As to said section 30, there is no contention but that the title to the same is in the government, and plaintiff would be entitled to damages for wood cut upon the same, unless the defendant could present facts showing that it had a license to enter upon the same and cut wood thereon. In the amended answer in this case the defendant admits that it entered upon said section and cut some 500 cords of wood therefrom and converted the same to its own use. The evidence, however, shows that the amount cut and appropriated by defendant from said section was some 4,500 cords. There is a denial in the answer that the defendant unlawfully or wrongfully cut any of this wood. This, however, is a denial of a legal conclusion, and is of no avail. The defendant also alleges as a defense that said section 30 was public mineral land of the United States, not subject to entry under any of the existing laws of the United States except mineral entries, and that defendant cut said wood for mining and domestic use in said

state of Montana, and no part of said wood was used for any other than mining and domestic purposes by bona fide residents of the state of Montana. Defendant presented evidence to prove this fact, and also to prove that it entered upon said premises in good faith, believing that the same were mineral land, and that it cut this wood under that belief. Plaintiff objected to this evidence upon the ground that it was not justified by any pleading in the case: (1) That, if said land was mineral land as alleged, defendant did not plead and show that it had complied with the rules and regulations established by the secretary of the interior upon the subject of cutting timber upon the mineral lands of the United States in the states and territories named in the act of congress; (2) that the plea of the defendant having entered upon the land in good faith was one in mitigation of damages, and should have been set forth in the answer.

The statute—20 Stat. 88 [U. S. Comp. St. pt. 1528]—which gives the right to cut timber upon the mineral lands in the states and territories aforesaid reads as follows:

"Section 1. That all citizens of the United States and other persons, bona fide residents of the state of Colorado, or Nevada, or either of the territories of New Mexico, Arizona, Utah, Wyoming, Dakota, Idaho, or Montana, and all other mineral districts of the United States, shall be and are hereby, authorized and permitted to fell and remove, for building, agricultural, mining, or other domestic purposes, any timber or other trees growing or being on the public lands, said lands being mineral, and not subject to entry under existing laws of the United States, except for mineral entry, in either of said states, territories, or districts of which such citizens or persons may be at the time bona fide residents, subject to such rules and regulations as the secretary of the interior may prescribe for the protection of the timber and of the undergrowth growing upon such lands, and for other purposes: provided, the provisions of this act shall not extend to railroad corporations. * * *"

It will be seen by this section that trees may be cut "under such rules and regulations as the secretary of the interior may prescribe for the protection of the timber and the undergrowth growing upon such lands, *and for other purposes.*" (The italics are mine.) Compliance with such rules and regulations as the secretary of the interior had power to make and adopt is necessary in order to give a license to cut trees, and this license, and all the facts necessary to constitute this license, should be specially set forth in the answer.

There is much doubt, I conceive, as to what rules and regulations the secretary of the interior was authorized to adopt under this statute. First, these rules and regulations were to pertain to the protection of the trees and undergrowth growing upon such mineral lands, and next for other purposes. What could be included under this term "other purposes" has never been fully determined by the courts. The secretary of the interior passed beyond the authority given him by the statute, and in his rules and regulations has undertaken to describe the land from which timber may be cut, and designated it as "strictly mineral." What is meant by this description we are not enlightened by any judicial authority. If there is any difference between mineral land and strictly mineral land we have not been informed. The courts have determined, to some extent, as to what evidence will be sufficient to determine what are mineral lands. In U. S. v. Edwards (D. C.) 38 Fed. 812, the court says:

"Land returned on the government survey as mineral land, of broken and rugged surface, with every indication of mineral ground, but on which no mines have been located, though in the vicinity of valuable mines, and which is unfit for cultivation and entry as agricultural lands, is within the meaning of Act Cong. June 3, 1878 [U. S. Comp. St. p. 1528], allowing timber to be taken from mineral lands on the public domain for building, agricultural, mining, or other domestic purposes."

In U. S. v. Richmond Min. Co. (C. C.) 40 Fed. 415, the court says:

"The defendant, a corporation engaged in mining, reducing ores, and refining bullion, purchased wood and charcoal for use at its reduction works. The cord wood, and the wood from which the charcoal was manufactured, were cut upon unsurveyed public mineral lands, mineral in character, of little or no value except for the mineral therein, and within organized mining ·districts, or not far remote from known mines. This was mineral land, within the meaning of the act of congress of June 3, 1878, permitting timber to be taken therefrom for 'building, agricultural, mining, or other domestic ,purposes,' and that defendant could lawfully purchase such wood and coal for said use under the license given by said act."

The mode of determining what is mineral lands adopted in the foregoing decisions was probably considered and approved by congress, in its legislation contained in 28 Stat. 683, entitled "An act to provide for the examination and classification of certain mineral lands in the states of Montana and Idaho." In that act the commissioners were to ·determine the mineral character of lands from the character of adjacent lands, and their mineral character and geological formation, etc., and the reasonable probability of such land containing valuable mineral deposits. These, I think, are better criterions for determining what is meant in the act of congress of June 3, 1878 [U. S. Comp. St. p. 1528], as to the lands upon which license was given to cut trees or ·timber. In U. S. v. Price Trading Co., 48 C. C. A. 331, 109 Fed. 239, it was held that the regulations prescribed by the secretary of the interior, under and pursuant to Act June 3, 1878, 20 Stat. 88 [U. S. Comp. St. 1901, p. 1528], authorizing the cutting of timber from public mineral lands in certain states and territories for building, agricultural, mining, or other domestic purposes, which regulations require "every owner or manager of a sawmill, or other person felling ·or removing timber under the provisions of this act," to keep a record showing by whom such timber was cut, from what lands, evidence ·of mineral character, to whom the timber was sold, and for what purpose, etc., and to take from such purchaser a written certificate, under ·oath, that the purchase is made for his own use, and for an authorized purpose, contemplate the keeping of such records only by persons who, ·like the proprietors of sawmills, make a business of cutting timber on ·mineral lands and selling it, or who are engaged to a considerable extent in such business, and they do not apply to settlers engaged ·chiefly in other pursuits, who cut small quantities of timber from ·mineral lands which they occupy, and who barter the same to a trader, ·with the understanding that it will be resold to other farmers or ranch-·men in the vicinity for domestic uses, so as to render such cutting or sale unlawful, although the prescribed conditions are not complied ·with.

It is not at all certain what power was granted to the secretary of ·the interior to make rules and regulations for other purposes than the

protection of timber upon the public domain and the undergrowth growing thereon. The statute giving the right to cut timber upon the public mineral lands of the United States is one which concerns the public good or the general welfare; it pertains to the citizens and bona fide residents of the states and territories named therein, and should be liberally construed. 1 Suth. St. Const. § 408. It is not to be supposed that congress intended to give the secretary of the interior the power, by rules and regulations, to annul or limit its effect; hence it is difficult to say just what facts the defendant should have pleaded to show that it had a license to go upon this land and cut the trees named, or what it should have alleged in mitigation of damages. I think, however, that, under section 700 of the Code of Civil Procedure of Montana, the defendant should have set up whatever facts it expected to prove in mitigation of damages, and should have complied with the statute by stating that it was for that purpose.

I do not feel called upon at this time and in this case to determine whether the secretary of the interior had, under the authority above named, the right to regulate the sale or disposal of cord wood cut from trees standing on the public mineral lands, and to require that the person selling such wood should obtain an affidavit from the purchaser as to the use to which he intends to put such wood, or to prescribe a system of bookkeeping for those engaged in that business. Rules and regulations upon the subject of cutting and disposing of cord wood should be reasonable and designed to promote the policy of congress in the statute under consideration. Anchor v. Howe (C. C.) 50 Fed. 366.

It is also claimed that it was error on the part of the court to admit in evidence the advice of counsel learned in the law, given to the defendant upon the question of a compliance by it with the rules and regulations of the secretary of the interior, with reference to the keeping of a record of sales and other regulations pertaining to the sale of its cord wood, and in this connection the plaintiff contends that in this action the plaintiff is not seeking to recover punitive or exemplary damages, and that only in cases of this character is the defendant permitted to introduce such evidence. In this case, however, plaintiff does seek to recover punitive or exemplary damages. It seeks to recover more than a compensation for the injury done. It is alleged in the complaint that the defendant willfully committed the trespass. In a case somewhat of the nature of this (U. S. v. Eccles [C. C.] 111 Fed. 490) the advice of an attorney was held to be proper to be given in evidence and was considered in mitigation of damages. In 1 Suth. Dam. p. 747, it is held that the advice of counsel in such cases is admissible in evidence at least to prevent exemplary damages. The advice of counsel as to the scope of the statute we are considering is proper to be considered. Reputable attorneys might well differ as to the power conferred upon the secretary of the interior under the act of June 3, 1878, in the clause "and other purposes," as contained in said act.

Defendant has asked for leave to amend its pleadings so as to conform to the evidence adduced at the trial; but this evidence was given and received under the objection of the plaintiff, and I think, under

such circumstances, the right to so amend is not proper. Brewer v. Jacobs (C. C.) 22 Fed. 244; 1 Enc. Pl. & Prac. 585, and cases cited in the note.

The view that evidence in mitigation of damages could be given without being pleaded was the error of both the court and counsel for the defendant. Under the rules of the common law and in some of the states under the code practice, such evidence could be given under the general issue. Pom. Rem. & Rem. Rights, § 693; 1 Suth. Dam. pp. 256–258; 5 Enc. Pl. & Prac. p. 776, and cases cited in the note; Beckwith v. Bean, 98 U. S. 279, 25 L. Ed. 124.

In conclusion, for the error above named I think a new trial should be awarded, and defendant be granted leave to amend its answer in accordance with the views above expressed; and it is so ordered.